cv4-745.DD.MATYASTIK 



 TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00745-CV







Jane R. Matyastik a/k/a Jane Matyastik Vorwerk, Appellant



v.



Commission for Lawyer Discipline, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 94-06040, HONORABLE JOHN DELANEY, JUDGE PRESIDING








PER CURIAM


 Jane R. Matyastik, also known as Jane Matyastik Vorwerk, appeals the trial-court
judgment suspending her license to practice law. We will affirm the judgment.



BACKGROUND


 The Commission for Lawyer Discipline filed this disciplinary petition against
Matyastik based on her conduct during a bond forfeiture suit against her; her husband, Harvey
Vorwerk; and her brother, Bob Matyastik. The bond forfeiture case was the culmination of a
series of interrelated proceedings in Milam County involving Matyastik, her brother, and Judge
Charles Lance, among others.



Actions Underlying this Disciplinary Proceeding

 In 1988, Matyastik was ticketed for speeding and failing to restrain her child in her
automobile. She was convicted in justice of the peace court in Milam County. She filed two $40
appeal bonds and appealed the conviction to Milam County Court. Charles Lance was the county
attorney; the job was not full-time and other attorneys assisted him with his official work. 
Matyastik's brother Bob, a bondsman, was the surety on her bonds.

 Matyastik testified that she worked out a deal with Lance that he would drop the
charges if she took a defensive-driving course. She said she took the course and sent Lance the
certificate. She said she assumed that the charges were dropped by the end of 1988. Lance
denied that he handled her cases or reached such an agreement.

 The cases were still on the docket when Hollis Lewis became county attorney. 
Matyastik received notice of hearing on the charges set for September 1992 before County Judge
Roger Hashem. She said she ignored the notice and did not appear because she believed that the
charges had been dropped. Lewis filed a motion to revoke the bonds, and Judge Hashem rendered
a preliminary forfeiture of the bonds and issued an arrest warrant. She was arrested in October
1992 while representing a client in another case at the Milam County Courthouse.

 Meanwhile, in early November, Matyastik's brother Bob was a defendant in district
court in a consolidated forfeiture proceeding on three bonds for which he was surety which were
unrelated to Matyastik's case. County Attorney Lewis was the prosecutor and former county
attorney Lance was the district judge. An excerpt of the statement of facts of an early-November
hearing in that case shows that Bob worked out an agreement with Lewis, approved by Judge
Lance, that Bob would pay fifty percent of the forfeited bonds in that case. Judge Lance stated
that a broader agreement called for Bob to pay thirty percent of the bonds in all other forfeiture
cases then pending; Matyastik's forfeiture case was pending then.

 Later that month, Matyastik appeared before Judge Lance in a pretrial hearing in
the forfeiture case in Milam County Court; Lance sat as county judge because Judge Hashem
recused himself after Lewis called him to testify regarding Matyastik's nonappearance. The
hearing was called for the limited purpose of addressing Matyastik's special appearance and plea
to the jurisdiction. Despite the court's direction to keep to those subjects, Matyastik repeatedly
orally requested the names of the prosecution's witnesses. Because she had filed no discovery
seeking those names, Judge Lance repeatedly lectured her on proper discovery techniques such
as interrogatories. Matyastik testified at the disciplinary proceeding that her repeated requests
were her indirect way to get Judge Lance to realize that he should recuse himself because he could
be called as a witness to her brother's agreement on the bonds.

 In December, Judge Hashem conducted the trial-de-novo appeal of the traffic-ticket
convictions. Matyastik was found guilty.

 In January, on a Friday a week before trial in the forfeiture case, Matyastik
subpoenaed for deposition Judge Lance, Lewis, and Lewis's administrative assistant. She also
caused a subpoena duces tecum to issue for them to bring numerous court records and other public
documents reaching back several years. The next Monday was a holiday, and Tuesday began a
week in which criminal trials were given priority settings. Lewis and Judge Lance were set to
be involved in jury trials, though none occurred. Matyastik set the deposition for Thursday in
Thorndale, the town in Milam County most remote (45 minutes by car) from the county seat of
Cameron. She said she set it for that day to avoid conflict with the early-week criminal settings. 
Judge Lance testified that he called Lewis about his subpoena. Lewis filed a motion to quash the
subpoenas. Judge Lance quashed all the subpoenas and cautioned Matyastik about the
inappropriateness of subpoenaing the judge sitting on the case. He found her in contempt of
court, but suspended the thirty-day sentence. He also granted the State's motion in limine
regarding mention of or inquiry into a defensive matter not listed among the statutory defenses
to a bond forfeiture listed in Texas Code of Criminal Procedure article 22.13. (1)

 At the forfeiture hearing the next day, Matyastik violated the motion in limine by
attempting to introduce evidence of Bob's agreement on the bonds. Also, despite the court's
ruling that the evidence was irrelevant, she attempted to elicit testimony from Judge Hashem about
his legal knowledge and educational background. Judge Lance described her attitude toward
Judge Hashem on the stand as uncivil and impolite. Judge Lance also described her general
demeanor as contemptuous, surly, loud, and lacking regard and respect for any judicial authority
or the court. Matyastik flatly denied this characterization.

 The key event, however, was the subpoena of Judge Lance served in open court
as the jury filed back into the courtroom. As they returned, Matyastik handed an envelope to a
friend in the courtroom who then took it to the bench and gave it to the judge. The envelope
contained a subpoena of Judge Lance requested by Bob Matyastik. The friend told Judge Lance
that Matyastik had asked her to hand the envelope to him on behalf of Bob. Judge Lance
excoriated Matyastik for disrupting the proceeding and thereby shocking both him and the jury. 
Judge Lance revoked the suspension of her contempt punishment, though she was never jailed. 

 Matyastik and Bob both testified at the disciplinary proceeding that he, as the
surety-defendant in the case, wanted to subpoena Judge Lance regarding the agreement to settle
his liability on pending forfeiture cases reached with Lewis; that he insisted almost incessantly that
Matyastik request or tell him how to request a subpoena; and that the service would have caused
no disruption had Judge Lance merely put the subpoena aside instead of erupting on the bench. 
Matyastik admitted she helped Bob prepare and obtain the subpoena.

 Matyastik did not file a motion to recuse or seek a writ of mandamus. She testified
that she tried informally to get Judge Lance to see that he should recuse himself rather than risk
alienating him by using a formal proceeding. She said she was surprised by the formality of the
prosecution of her tickets and forfeiture because her previous experience in that county with those
individuals had been relatively informal.



The Disciplinary Proceeding Below

 The jury in the discipline case found that, while representing herself and her
husband in the bond forfeiture cases, she stated or alluded to a matter that she did not reasonably
believe was relevant, engaged in conduct intended to disrupt the proceedings, and knowingly
disobeyed a ruling by the judge. These findings state violations of Texas Disciplinary Rules of
Professional Conduct 3.04(c)(2), 3.04(c)(5), and 3.04(d), respectively. 

 Based on these findings, the court suspended her license for three years, with the
first 120 days being active suspension and the remaining 975 days to be probated on several
conditions. The terms of her probation prohibit her from signing or filing any pleading or motion
in any Texas trial court of record unless another Texas-licensed attorney in good standing who
is acting as co-counsel on the matter signs the document. She also cannot present any oral
motions or argument, offer evidence, or interrogate witnesses during a proceeding in any Texas
trial court of record. The court's modified final judgment invoked this suspension for each of the
three rules violations.



DISCUSSION


 On appeal, Matyastik raises four points of error. By the first three, she challenges
the factual sufficiency of the evidence to support the three jury findings stating violations of the
disciplinary rules. By the fourth, she asserts that the trial court abused its discretion by
suspending her from practice for three years and setting the terms of her probation; the substance
of the point focuses on particular restrictions on her practice.



The Jury's Findings of Misconduct

 Because the trial court invoked the suspension for each disciplinary rule violation,
we may affirm the judgment by finding sufficient evidence to support any one of the jury's
findings. When reviewing jury findings for factual sufficiency, we must review and weigh all the
evidence. Plas-Tex, Inc. v. United States Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We
may set the judgment aside only if the favorable evidence is so weak as to render the judgment
clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 We start with the finding that Matyastik engaged in conduct intended to disrupt the
proceeding. There is no doubt that serving Judge Lance with the subpoena in open court
disrupted the proceeding; the only question regards her intent. A jury may infer intent. See
Behringer v. Behringer, 884 S.W.2d 839, 842 (Tex. App.--Fort Worth 1994, writ denied); see
also Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986). The jury easily could
have inferred that she intended disruption because (1) she assisted in serving the subpoena
knowing that the court had quashed a similar subpoena only the day before and had sanctioned
her, (2) she assisted in serving the subpoena though the testimony would have been relevant only
to an issue excluded by the court, and (3) she asked for the service of the subpoena in open court
as the jury was returning to the court, rather than while they were completely out of the
courtroom. That she participated only because of her brother's insistence does not make the
jury's finding incorrect. Whether the court's quashal of the subpoenas was correct is irrelevant
to the issue of whether she intended to disrupt the proceeding by serving the judge with another
subpoena in open court in front of the jury. Her conduct is the only issue here.

 The jury could have interpreted other conduct as intentionally disruptive as well
as disobedient of a court ruling. Testimony indicated that she disrupted the November special-appearance hearing and the January trial by persistently repeating informational requests to which
the court had sustained objections. Matyastik argued that the court simply sustained objections
and moved on, and thus she did not disobey a court order, but other testimony shows that Judge
Lance repeatedly admonished her on the same issues. She argued that she merely was being a
zealous advocate in pursuing alternative methods of admissibility. Sufficient evidence supported
the jury's finding that her repeated requests despite contrary court rulings did not suggest
alternative methods and demonstrated such a disregard for the court's rulings that they constituted
disobedience of court rulings and intentional disruption. 

 Whether she was justified in ignoring the court's rulings because of questions
regarding the validity of Judge Lance's appointment is not an issue on this appeal. Matyastik
argues that Judge Lance was not properly appointed and that his orders therefore imposed no valid
obligation on her. Though she raised the propriety of his appointment at the trial level, his
appointment was not overturned and her lingering doubt regarding its validity does not provide
a basis to overturn the jury's finding in this case. The validity of his appointment and his rulings
was not part of the instructions, definitions, or question presented to the jury below; she does not
challenge that noninclusion here. We cannot overturn a jury finding based on a defensive issue
not presented to the jury. Evidence that she believed the voidness of his appointment justified her
disobedience of his rulings actually favors the jury's finding. By arguing that her disobedience
was justified, she implicitly admits that she disobeyed his orders.

 Matyastik's assertion that she refrained from taking other actions that also would
have been disruptive or violative does not weigh in favor of overturning the jury questions. The
question is not whether she could have been more disruptive or disobedient. One disruptive act
and one disobedient act are enough. 

 Sufficient evidence supports the jury's second and third findings. We overrule
points two and three. Because support for just one of these is enough to affirm the judgment, we
need not consider point of error one.



The Punishment

 By point of error four, Matyastik challenges the court's disciplinary action. We
review the trial court's punishment determination for abuse of discretion. State Bar of Texas v.
Kilpatrick, 874 S.W.2d 656, 659 (Tex. 1994); State v. Ingram, 511 S.W.2d 252, 253 (Tex.
1974). We can reverse for an abuse of discretion only if the court acted arbitrarily or
unreasonably and without reference to any guiding rules and principles. Beaumont Bank, N.A..
v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). In determining the appropriate sanction, courts
must consider



the nature and degree of the professional misconduct, the seriousness of and
circumstances surrounding the misconduct, the loss or damage to clients, the
damage to the profession, the assurance that those who seek legal services in the
future will be insulated from the type of misconduct found, the profit to the
attorney, the avoidance of repetition, the deterrent effect on others, the
maintenance of respect for the legal profession, the trial of the case, and other
relevant evidence concerning the attorney's personal and professional background.



Tex. R. Disciplinary P. 3.10 (1995); see also Kilpatrick, 874 S.W.2d at 659. The statement of
facts shows that the trial court considered these factors. The court appears to have rested its
decision largely on the possibility of repetition, deterrence, and the damage to the profession.

 Matyastik presented testimony defending her character and professionalism. She
explained that she became a lawyer to help people and believed that she was doing so. She
believed she was conscientious in her representation and courteous and respectful. Several
witnesses testified favorably for her. Other factors balanced their testimony.

 The court considered Matyastik's recent disciplinary history. She had been
reprimanded during the summer before the forfeiture proceedings for failure to appear on behalf
of clients in two cases. In one case, she failed to appear at a hearing Judge Lance held following
this court's issuance of an opinion ordering the remand of a case; she said she was justified in not
appearing because Judge Lance had no jurisdiction because this court had not yet actually
remanded the case. In the other case, she said she did not appear because her opponent had told
her the case would not proceed because the opposition's witness was unavailable; the opposition
then proceeded anyway. She testified that, though she thought the professional misconduct
complaint was invalid, she agreed to the reprimand to spare her family the stress of a trial. 
Regardless of the justification for the previous sanction, the similarity between the sanctioned
behavior and the nonappearance at the root of the problems here hurt Matyastik's defense.

 Matyastik's conduct on the first day of the disciplinary proceeding when she was
representing herself greatly affected the trial court. She repeatedly ran afoul of motions in limine
while questioning witnesses. The trial judge observed that the transgressions finally stopped after
he reminded her for the second time that he would decide her punishment. The similarity of her
behavior in the disciplinary hearing to the behavior found by the jury to have occurred in the
underlying forfeiture case hurt her defense.

 The trial court opined that the forfeiture trial had to have left the jurors, spectators,
and persons who heard about the proceedings with a bad view of the profession. The punishment
had to be severe enough to demonstrate that the conduct was unacceptable in order to repair the
damage to the profession.

 The court stated that it considered the range of punishments. It rejected
disbarment, in part because the misconduct did not involve greed, corruption, or loss to a client
(other than, perhaps, her husband). The court felt that a light punishment would further diminish
the profession's standing and would not deter future such conduct by her or others. 

 The punishment selected represents the court's considerations. The suspension
shows the seriousness of the court in condemning such behavior. The probation of the suspension
recognizes that more serious misconduct exists; it also allows her to practice in a limited way
while keeping a threat of renewed suspension to deter repetition. The limitations on her activities
directly address the troublesome behaviors; the heightened education and supervision requirements
attempt to correct those problems. We cannot say that the court abused its discretion with such
a tailored punishment. We overrule point four.



CONCLUSION


 The judgment imposed the suspension based on each of three violations. Having
found sufficient evidence to support two of the findings and having affirmed the suspension based
on those findings, we affirm the judgment.


Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: April 17, 1996

Do Not Publish

1.   The matters listed include invalidity of the bond, death of the principal, sickness of
the principal, uncontrollable circumstance prevented the principal's appearance through
no fault of the principal, and failure to present an indictment at the first term of court
held after the principal has been admitted to bail. Tex. Code Crim. Proc. Ann. art.
22.13 (West 1989).

, 874 S.W.2d at 659. The statement of
facts shows that the trial court considered these factors. The court appears to have rested its
decision largely on the possibility of repetition, deterrence, and the damage to the profession.

 Matyastik presented testimony defending her character and professionalism. She
explained that she became a lawyer to help people and believed that she was doing so. She
believed she was conscientious in her representation and courteous and respectful. Several
witnesses testified favorably for her. Other factors balanced their testimony.

 The court considered Matyastik's recent disciplinary history. She had been
reprimanded during the summer before the forfeiture proceedings for failure to appear on behalf
of clients in two cases. In one case, she failed to appear at a hearing Judge Lance held following
this court's issuance of an opinion ordering the remand of a case; she said she was justified in not
appearing because Judge Lance had no jurisdiction because this court had not yet actually
remanded the case. In the other case, she said she did not appear because her opponent had told